Baldwin, J.
delivered the opinion of the Court.
It is the duty of an executor, not to sell, but to collect, the debts due to the estate of his testator, including those arising out of sales of goods made by the executor in the course of his administration ; and if he sells such' debts at a price below their value he thereby *145 commits a devastavit, unless he makes it appear that such sale was manifestly required by the interests of the estate: And this he can never do without shewing, in the first place, that the proceeds thereof have been applied to the purposes of the estate. The tion by the executor of the proceeds of such a sale to his own individual uses, presents the case of a fraudulent breach of trust on his part, for which of course he is personally liable to creditors, legatees and others, injuriously affected by such improper diversion of the assets. And the purchaser himself, so acquiring such debt at a profit, if he has reason to believe at the time that the same belongs to the estate, and is so disposed of by the executor, for his individual uses, thereby concurs in such fraudulent breach of trust by the executor, and therefore incurs the like liability.
In this case the bonds purchased by the appellant from Newbill, the administrator with the will annexed of Mary Crafton deceased, were executed by the obligors for the prices of certain slaves belonging to the testatrix’s estate, and sold by the administrator under the authority of her will; which bonds are on their face payable to Newbill in his character of administrator. The appellant had therefore the best reason to believe that the bonds belonged to the testatrix’s estate, when he purchased them from the administrator at a discount of 18 or 20 per cent., and from the profit he was thus allowed to make, he had good reason to believe that the administrator was selling them for his own individual uses; a fact which the result and the condition of the estate have abundantly shewn. Under these circumstances, it was incumbent upon the appellant to stay his hand, until he should ascertain b3r the requisite enquiries, that the sale was to be made for the purposes of the estate, and the sacrifice to be incurred indispensably necessary to prevent some still greater sacrifice. He must have known that it was not in the *146 usual course of administration for an executor to sell debts due the estate at a sacrifice, and he was bound to know that such a sale cannot be tolerated unless under .. . „ , „ , , . very peculiar emergencies ox the estate. If he had. ma(je (-jjg enquiry, he would have ascertained that the condition of the estate did not require the sale of the bonds. But in truth he knew it without the necessity of enquiry; for he says in his answer that “ he was aware that after satisfying the debts of the testatrix, which he believed to be inconsiderable, and the specific legacy of the bed and furniture, the residue of her estate was to go by one moiety to the said Newbill, and by the other to Mary and Catharine Phillips, and he considered that the bonds he was purchasing would not overgo the part of the estate bequeathed to Newbill and so defending himself upon the ground that his speculation was warranted, as he believed, by the administrator’s individual interest in the estate. But he ought to have known that the administrator had no right to appropriate the assets to the satisfaction of his own legacy, to the entire exclusion of the other legatees; and he was bound to ascertain that Newbill’s legacy had not already been satisfied, as in fact it was by his individual purchases at the public sale of the property of the estate ; unless indeed he chose to apply them by actual payment to the satisfaction of his co-equal legatees.
It is no valid defence for the appellant that at the time he purchased the bonds, it was his belief and that of the public generally that the administrator was then in solvent circumstances. Such belief may have induced him to look to the individual responsibility of the administrator as a guarantee against the failure of his speculation, and to that responsibility he must still look, and its having proved abortive furnishes no reason for throwing the consequent loss upon those whom he has aggrieved by his intermeddling with the affairs of the estate, from no other motive than the desire of gain *147 to himself, and careless as to its effects upon the rights of others.
Nor does the statute of limitations afford protection to the appellant, for the appellees have no remedy but in equity, which will not allow its application to such a case as this.
The decree therefore of the Circuit court is proper, in holding the appellant responsible to the appellees for the money paid by them as sureties of the administrator to Mary and Catharine Phillips, in discharge of the decree of the Circuit court of Campbell county. But there is error therein to the extent of 38 dollars 75 cents, the costs recovered against the appellees, in their unsuccessful injunction suit with Garland’s ex’or <fcc. there being no propriety in subjecting the appellant therefor. This error is, however, more than counterbalanced by another against the appellees to the extent of 136 dollars 81 cents, by crediting the appellant twice with that sum on account of the funds received by the appellees for their indemnity as sureties in the administration bond, under the deed of trust from Newbill in the proceedings mentioned, which error is made to appear by a note of appellees’ counsel filed with the record, and marked J. R. C.
And the appellees, by their counsel, not desiring to disturb the said decree because of the said error to their prejudice; and the Court being of opinion that there is none to the prejudice of the appellant; it is adjudged, ordered and decreed that the same be affirmed, with costs to the appellees.